**Cite as: Opinion No. 00-015 (June 16, 2000)**
**(unpublished)**

ASSESSMENTS AND TAXATION ) PERSONNEL ) SECRETARY OF
BUDGET AND MANAGEMENT MUST FOLLOW RATIONAL
PROCESS TO DETERMINE APPROPRIATE PAY INCREMENT FOR
ASSESSORS WHO ATTAIN PROFESSIONAL DESIGNATION

June 16, 2000

*Mr. Ronald W. Wineholt*
*Director*
*State Department of Assessments and Taxation*

You have asked for an interpretation of Annotated Code of Maryland, Tax-Property Article ("TP"), §2-110(a), which requires that the salary schedules set for tax assessors include an "appropriate" incentive for assessors to achieve the certified assessment evaluator ("CAE") designation. You ask whether the statute mandates a salary increment for any assessor who achieves that designation.

While TP §2-110(a) leaves no doubt about the General Assembly's judgment that it is desirable for State assessors to earn the CAE designation, that provision does not require that the State's Standard Pay Plan include any particular salary increment for assessors who achieve CAE status. In our opinion, what is required is that the Secretary of Budget and Management make a reasonable and good faith evaluation of the efficacy of awarding a pay increment as a means to accomplish that result.

# I

## Background

### A.   TP §2-110(a)

Under the Tax-Property Article, the Secretary of Budget and Management, after consultation with the State Department of Assessments and Taxation ("SDAT"), is to set schedules of classifications and salaries, as well as minimum education and experience qualifications, for employees of SDAT. TP §2-109. State law also authorizes the inclusion

of a pay increment for assessors who attain the CAE designation. The statute provides in relevant part:

> The salary schedules set for assessors under §2-109 of this subtitle *hall* provide an *appropriate* incentive to encourage assessors to achieve the designation of certified assessment evaluator.

TP §2-110(a) (emphasis added.) This provision, essentially unchanged since 1973, has been the subject of dispute between the SDAT and State personnel authorities for approximately 20 years. A review of the history of the statute and of several failed attempts to amend it is instructive in construing it.

## B.  Pre-1973:  County-Based Assessment

Before 1973, local supervisors of assessments and their staffs were not within the State personnel system. Rather, they were covered by various county personnel systems, even though State law set requirements with respect to salaries and provided for the State to share in the funding of those salaries. *See, e.g.*, Annotated Code of Maryland, Article 81, §237 (1969). Beginning in 1957, State law dictated that assessors achieving the designation of CAE – a professional distinction awarded by the International Association of Assessing Officers based on experience, training, demonstration projects, and an examination – receive a salary "$500 per annum greater than" the salary established in the otherwise applicable salary schedule. Chapter 514, Laws of Maryland 1957, *enacting* former Article 81, §235(m).

## C.  State Takeover of Assessment Function

In 1973, the General Assembly enacted legislation to phase in a State takeover of the assessment function from the counties: supervisors of assessments were to enter the State personnel system and be fully paid with State funds as of July 1, 1973; assessors were to join the State personnel system and be paid by the State as of July 1, 1974; and remaining personnel were to move to the State personnel system and payroll as of July 1, 1975. Chapter 784, Laws of Maryland 1973. In each case, those employees transferring from county personnel systems to the State system were to be placed in the most closely comparable position, without further examination or qualification, and without diminution or loss of any benefits to which they had been entitled before the transfer. *Id.*, *enacting* former Article 81, §246B(d), §246C(d), and §246D(d).

As part of the 1973 takeover legislation, §235(m), requiring a salary differential for assessors achieving the CAE designation, was deleted and replaced by a new §237(b), under which salary schedules for all assessment personnel were to be determined by the Secretary

of Personnel[1] after consultation with SDAT. In addition, under the new provision, "[t]he salary schedules determined in accordance with this subsection [were to] provide an appropriate incentive to encourage assessors to achieve the designation of certified assessment evaluator." Following enactment of this legislation and the 1974 transfer of former county assessors to the State personnel system, those assessors who had been receiving an annual $500 pay differential because of their CAE status continued to do so. Section 237(b) was later recodified as TP §2-110(a) when the Tax-Property Article was adopted in 1985.

## D.    *Failed Legislative Attempts to Set Specific Incentive Amount*

A few years after the State takeover of assessment personnel, questions arose about the pay differential for assessors with a CAE designation. During the 1977, 1978, and 1980 sessions of the General Assembly, SDAT initiated departmental bills that would have amended Article 81, §237(b) to provide a $1000 pay differential for assessors who obtained the CAE designation. Senate Bill 1155 (1977); House Bill 312 (1978); House Bill 460 (1980). Those bills all failed when they received unfavorable committee reports. At the time the 1978 and 1980 bills were before the Legislature, the Secretary advised that the bills were unwise or unworkable.[2]

The issue of a pay enhancement for assessors who achieve CAE status was raised intermittently over the next two decades in correspondence between the Director of SDAT and the Secretary, but was never resolved. SDAT favors an interpretation that TP §2-110(a) requires payment of some monetary incentive, while State personnel authorities apparently have never found it "appropriate" to award any salary increment for achievement of a CAE

---

[1]When assessors were first absorbed into the State personnel system and until 1996, the responsibility for State personnel matters resided in the Department of Personnel, an independent, Cabinet-level department within the Executive Branch. In a 1996 reorganization of the Executive Branch, personnel matters were assigned to the Department of Budget and Management. Chapter 349, Laws of Maryland 1996. The Department of Budget and Management has placed its personnel functions in an Office of Personnel Services and Benefits. We use the term "Secretary" later in this opinion to mean the Secretary of Personnel before 1996, and the Secretary of Budget and Management since that time.

[2] In 1978, the Secretary submitted a letter to the House Appropriations Committee, to which the bill was initially assigned, taking no position for or against the bill, but suggesting the inability of his department to provide administratively for the increased and broader pay incentives sought by SDAT. In 1980, the Secretary testified in opposition to the bill, expressing the fear that it would set a precedent for other groups of State employees to seek pay differentials.

designation, except to those few assessors who were receiving such a payment when they entered the State personnel system.

# II

## Analysis

You correctly observe that TP §2-110(a) uses the mandatory "shall" in directing State personnel authorities to provide "an appropriate incentive." Nevertheless, TP §2-110(a) cannot properly be read to require the Secretary to provide, in the Standard Pay Plan submitted to the Governor and the General Assembly, for any specific monetary payment to reward assessors who have attained CAE status.

The law plainly vests – and since 1973, when assessment personnel became part of the State system, has continuously vested – discretion in the State's personnel authorities, in the first instance, to determine "an appropriate incentive." The role of the Director of SDAT in this regard is and always has been secondary or consultative.

Furthermore, the General Assembly has repeatedly rejected efforts to eliminate the discretion of the Secretary and to mandate a specific pay increment. As noted above, three bills introduced at SDAT's instance to establish a specific pay increment were quickly defeated, two of them after the Department of Personnel raised questions or indicated opposition. While the Maryland courts have stated that failed legislation is "a rather weak reed on which to lean in ascertaining legislative intent," *Goldstein v. State*, 339 Md. 563, 569-70, 664 A.2d 375 (1995); *Andy's Ice Cream v. Salisbury*, 125 Md. App. 125, 154, 724 A.2d 717 (1999), there can be no question that the General Assembly has left the amount of any incentive in the hands of the Secretary.[3] Under the circumstances, we do not believe that the mandatory "shall" in TP §2-110(a) can be read to override the equally apparent word, "appropriate."

Of course, the Secretary must exercise that discretion in a reasonable manner and must not be arbitrary or capricious. *See Office of People's Counsel v. Maryland Public Service Commission*, 355 Md. 1, 30, 733 A.2d 996 (1999). In this regard, the Secretary is obliged to heed the General Assembly's expressed desire to encourage assessors to further their professional standing by earning the CAE designation. Thus, the Secretary cannot decline to include an incentive payment simply to reduce personnel costs. Rather, the

---

[3]Even if the bills introduced in 1977, 1978, and 1980 are seen solely as attempts to *increase the amount* of the incentive payments, and not to *expand the category of recipients*, the General Assembly's rejection of the bills suggests that the Legislature declined to take the determination of "an appropriate incentive" out of the hands of the Secretary.

Secretary must make a good faith determination about an appropriate incentive – which may, in the final analysis, involve no additional pay.

For example, given the legislative determination that $500 was an appropriate incentive during the period 1957-73, the Secretary could analyze the ratio that amount bore to the salaries paid assessors during that period and its effectiveness in increasing the number or percentage of assessors. Based on that analysis, if the percentage of assessors achieving the designation increased over that time period, the Secretary could reasonably conclude that an increment of similar relative magnitude should be included in the current salary schedule. Alternatively, if the increment had little discernible impact on the number of assessors achieving the designation the Secretary could reasonably conclude that a minimal or no increment was appropriate.

The Secretary could also examine whether other jurisdictions provide a monetary incentive for achievement of the designation (and, if so, in what amount), and whether payment of an incentive in another jurisdiction resulted in an increase in the number or percentage of assessors obtaining the designation. In addition, the Secretary could analyze the costs an assessor incurs in achieving the CAE designation. After considering that information, the Secretary could determine that an increment that offsets the cost of achieving the designation would be an appropriate incentive or, conversely, that an incentive payment would have no discernible effect on the number or percentage of Maryland assessors obtaining the designation.

In our view, the Secretary is not obliged to adopt any particular methodology. Rather, all that is required is that the Secretary follow some rational process in determining an "appropriate incentive" to encourage attainment of the CAE designation. If the Secretary follows such a process and determines that no salary increment is appropriate, that decision is within the Secretary's discretion under TP §2-110(a).

III

Conclusion

On its face, TP §2-110(a) places it within the discretion of the Secretary to determine the incentive that is "appropriate" to encourage assessors to achieve CAE status. In our opinion, the statute does not require the Secretary to provide in the State's Standard Pay Plan for any particular salary increment, however minimal. However, the Secretary must follow some rational process to determine what increment, if any, would be "appropriate" to achieve the statutory goal of encouraging assessors to achieve CAE status.

J. Joseph Curran, Jr.
*Attorney General*

Judith A. Armold
*Assistant Attorney General*

Robert N. McDonald
*Chief Counsel*
  *Opinions & Advice*